# WORDS AND PHRASES — COLLEGES AND UNIVERSITIES — INJUNCTION.

[Lucas (6th) Circuit Court, May 28, 1904.]

Parker, Hull and Haynes, JJ.

JAMES WADDICK (TAXPAYER), ETC. v. JOHN B. MERRELL ET AL.

**1. CONSTRUCTION OF WORD "UNIVERSITY" IN SEC. 217 OF THE MUNICIPAL CODE.**

The word "university," as used in Sec. 217 of the new municipal code (96 O. L. 91; Sec. 1536-933 Rev. Stat.), must be construed according to the legislative intent, and not in its strict or technical sense. Hence, where the word was used with respect to the "Toledo University" by the donor in a deed of trust providing funds therefor, by the legislature in previous acts, and by the city council in its legislation thereon, an act providing for the administration of "a university supported wholly or in part by municipal taxation," and clearly referable to such institution, will apply thereto.

**2. PROVISION OF SEC. 4105 REV. STAT. AS TO TAXES NOT REPEALED BY SEC. 207 OF THE MUNICIPAL CODE.**

Section 217 of the new municipal code does not repeal that part of Sec. 4105 Rev. Stat. providing for the levy of taxes for the support of municipal universities.

**3. EFFECT OF ACT 97 O. L. 544, QUAERE.**

Whether the act of May 3, 1904 (97 O. L. 544), recommits the management of such institution to the board of education, *quaere.*

**4. COURT NOT BOUND TO GRANT MANDAMUS WHERE LEGAL RIGHT TO RELIEF EXISTS.**

A mandatory injunction when directed to particular officers, and commanding the performance of certain official acts or duties is, in effect, a mandamus. This is an extraordinary remedy which the court, in its discretion, may refuse, even though a legal right to relief exists. Hence this court, in view of the possible demoralization of the schools liable to result therefrom, will not at this time compel a change of management of the "Toledo University," under the doubtful authority of act 97 O. L. 544.

APPEAL from Lucas common pleas court.

**J. Y. Todd,** for plaintiff.

**C. S. Northup,** for defendants.

## PARKER, J.

This action is in this court by way of appeal. It is in its nature and upon its face an action of injunction to restrain the directors of the so-called Toledo University from exercising certain franchises, from holding and controlling certain property, and from expending for the purposes of the university funds raised by taxation, and is also to require the board of education of the city of Toledo to do what it is charged the directors of the so-called university are, doing in that behalf. It is charged, in short, that the statute providing for this directory which is appointed by the mayor of Toledo is, invalid, and also that it does not apply to the city of Toledo, and is therefore ineffective; that the appointment made under it is nugatory, because, as it is said, it applies only to cities where there is in fact a university, and that the city of Toledo has not, in fact, a university—that the so-called Toledo University is not a university, within the purview of the act. It is also charged in the petition that the act under which the levy is made to provide for funds to be raised by taxation for the support of this institution is invalid on various grounds, especially on the ground that the legislation is special—that it provides for an unauthorized classification of municipalities.

There are answers filed on behalf of the various defendants, but the issues of fact made are very narrow, and perhaps not very important in certain aspects of the case, unless in one particular. There is an issue made as to the kind and grade of studies taught by the Toledo University and by the Toledo high school, and we have heard some evidence on that issue.

The petition was filed on July 6, 1903. It appears that prior to the enactment of the statute providing for this board of directors which is now in control, to wit, (96 O. L. 91), Sec. 217 of the new code the property and the management of the so-called university was under the control of the board of education of the city of Toledo school district, and that by virtue of an act so providing theretofore in force. It is charged in the petition that this pretended board of directors of the "university," as it is therein designated, "has demanded that the board of education turn over to it all of said property and funds, and that said board of education shall hereafter cease to maintain instruction in said manual training work, leaving such instruction to be provided by such pretended board of directors," and that unless restrained from so doing the board of educa-

tion will accordingly turn over the property and affairs to the board of directors of the university. It appears by a supplemental petition filed in the case, and by the records and evidence in the case, that no restraining order was issued, and that subsequently the property was turned over to the board of directors of the university, and the university took charge of it, and has since been in control of the school or the department of education which is designated as the "Toledo University." It is also stated in the petition that a levy of three-tenths of one mill on the dollar of valuation has been made on the taxable property of the city for the purposes of the Toledo University; that this was done on June 15, 1903; and that the board of directors of the university has requested the defendant William M. Godfrey, as county auditor, to place the same upon the tax duplicate of the county, the funds to be realized from such levy to be used by said "pretended board of directors." With respect to that it appears that no restraining order was issued; that this levy was subsequently made; that the December half of this levy has been collected, and the funds turned over to the board of directors of the university. The June half is upon the tax duplicate, and is about due for collection; so that the aspect of affairs has changed somewhat, we may say has, in our judgment, changed materially, as the case presents itself to the court for disposition, since the action was commenced.

As to the constitutional questions involved. In the case of State v. Toledo, 13-23 O. C. C. 327, these constitutional questions and various other questions pertaining to this institution, were very fully considered by this court, as will be seen by reading the opinion by Judge Haynes in that case. A great many of the questions considered in that case are not involved here, but we think that these constitutional questions were necessarily involved there. It is urged that the particular questions of the taxing power which is conferred, or undertaken to be conferred, upon the city or upon the board of education, under the statute in question, was not passed upon by the court there. We think, however, that the whole act was necessarily involved, and all its provisions. Even if that were not so, in the situation of this case as I have described it, the tax having gone upon the duplicate, being due for collection and partly collected, the treasurer not being made a party defendant, nor sought to be restrained from making any collection, the case seems to have shifted into one where we are asked to require one board to take control of the property and affairs of the Toledo University, including the amount to be collected as taxes, and to restrain the other board from exercising such control, and that its aspect of a proceeding to restrain the levy of taxes

has passed away. We therefore do not believe that it is necessary for us to go any further into a consideration of the constitutional questions involved. We think they are sufficiently discussed and that they are necessarily disposed of in the case of State v. Toledo, *supra*.

It will be observed that what remains of the case, and the disposition to be made of it, depends in large measure upon the construction to be put upon this section of the statute (96 O. L. 91, Sec. 217) providing for the appointment of this board of directors, and more particularly upon the construction of the word " university " found in the statute. It reads in part:

''In any municipal corporation having a university supported in whole or in part by municipal taxation all the authority, powers and control vested in or belonging to said corporation with respect to the management of the estate, property and funds given, transferred, covenanted or pledged to said corporation in trust or otherwise for such university, as well as the government, conduct and control of such university, shall be vested in and exercised by a board of directors consisting of nine electors of said municipal corporation, who shall be appointed by the mayor of such municipal corporation.''

It then gives their terms of office, etc.

It was in pursuance of that provision that this board was appointed, and it is contended that this act does not apply to this city or to this institution in the city of Toledo, because the institution is not a university. Upon that subject counsel for plaintiff has furnished us with many definitions of lexicographers, and scholars, and it seems to us plain that, according to these definitions, the institution is not a university as it is and for some time has been carred on.

But that does not settle the question. What we are called upon to determine is, the sense in which the legislature used this word ''university'' in this statute. It is said with very good reason, that ordinarily the legislature will be presumed to have adopted the correct and technical meaning of words, or at least their general and ordinary meaning; but it seems to us that there has been a somewhat loose use or misuse of this word from the beginning, by the donor in the deed of trust providing for funds for this institution, by the council of the city in its legislation upon the subject, and by the state legislature in legislating upon the same subject. It seems to us that it is apparent from the legislation of the state that the word ''university'' has been used with respect to this very institution, from the beginning of the legislation upon the subject, or ever since the city of Toledo could have come within the purview of the law.

Waddick v. Merrell.

It has been suggested that the original statute applicable to the city of Cincinnati, and to that city alone, mentions "university," and that there has never been, or was not in the beginning, a university there, within the true meaning of the term. It was a university in embryo in the first instance. But however that may be, with respect to the city of Toledo it is apparent that the legislation has been directed to the control and management of this very institution. It is the only institution in the city of Toledo that is or has been a university either in fact or in name, either in existence or in embryo. In point on the subject is 94 O. L. 241. This is Sec. 4105 Rev. Stat., as amended on April 16, 1900, and it is the law that was in force at the time the case of State v. Toledo, *supra*, was decided. It prescribes (as does 96 O. L. 91, Sec. 217 also), that it shall apply to a city where a university is located. Most of the statutes, and this Sec. 4105 Rev. Stat. in most instances as it has been amended from time to time, have contained other terms whereby they might be applied to other institutions than universities; "schools," and "institutions of learning," were terms used in addition to the word "university," but in this statute the word "university" alone is used. It provides:

"That the provisions of this chapter shall be applicable to cities of the third grade of the first class, except that the rate of taxation to be assessed and levied, shall not exceed one-half of one mill upon the taxable property of such cities; and except that the board of directors or trustees shall consist of five members and shall be filled by appointment from persons of approved learning, discretion and fitness for the office, by the board of education and confirmed by the common council in the city in which such university shall be located."

It was in pursuance of that section that the board in control was acting at the time of the doing of the acts that I have mentioned. It was in pursuance of that that it had been formed. Under that it derived whatever authority it may have acquired.

Now, we think that some weight and significance should be attached to the action of the state, as represented by the attorney-general in the case of State v. Toledo, *supra*. Without stopping to recite a great deal that is contained in the petition in that case, I will say that it is therein stated and repeated in various forms, that the city of Toledo came within the purview of the act, and that this was a university. There is no question made about it in that case. It was stated, and accepted on all hands as a fact. The idea of making the attack upon the other ground seems to be a new one—something that has originated since that case was

brought here by the state. This, as I say, indicates that the then law officer of the state as well as the legislature of the state, have treated the institution called a university in the city of Toledo as a university, and that the state has legislated with respect to it. The act to which I have just called attention would apply to the city of Toledo only. Indeed, it was attacked upon that ground in that case as being special. In part of this legislation, in one act at least, the city of Toledo is specifically mentioned as the city to which the act is to apply.

Our conclusion upon the matter is, therefore, it being, as I say, apparent to us that the legislature has legislated with respect to the city of Toledo and this institution called a "university" in the city of Toledo, that the legislature has used the term "university" in the loose way, perhaps in the improper way, that it has been used by citizens of the city generally, by the donor, and by the city legislature of the city of Toledo i. e., as applicable to this institution; and that therefore the act applies to the city of Toledo, and the mayor was called upon to act, and proceeded properly and regularly in appointing this board of directors. That substantially disposes of the case.

There is another matter that I shall mention. In this Sec. 217 of the new code (96 O. L. 91) there is a provision that "all acts or parts of acts not inconsistent herewith which govern such universities shall be and remain in full force and effect and Secs. 4095, 4096, 4097, 4099, 4100, 4101, 4102, 4103 and 4104 Rev. Stat., as amended May 12, 1902, shall remain in full force and effect." There is no mention, it will be observed, of Sec. 4105 Rev. Stat., which is the section which makes the act applicable to the city of Toledo—the section which authorizes the levy of taxes in the city of Toledo and which provides the number and character of the trustees, etc., for the institution in the city of Toledo. That has given rise to some doubt and uncertainty as to whether that section of the law was repealed or preserved by the provision, that "all acts or parts of acts not inconsistent herewith which govern such universities shall be and remain in full force and effect;" and the provision elsewhere found that all acts inconsistent shall be regarded as repealed. But the chief purpose of the legislature in the adoption of the municipal code, as is well known, was to abolish all the classifications that had theretofore been provided by legislation, and which the Supreme Court had held to be unconstitutional. It is the evident purpose of this section to bring all municipal corporations of the state, where there may be universities existing, within its purview. In so far, then, as 96 O. L. 91, Sec. 217 provides for the mode or system of government, who the

directors shall be, how they shall be appointed, etc., we are of the opinion that it covers the whole subject, and necessarily abrogates so much of Sec. 4105 Rev. Stat. as contains the provision that the matter shall be committed to the control of the board of education of the city school district. It does not follow, however, that all of Sec. 4105 Rev. Stat. was thereby abrogated. That section provided for the levy of taxes by the board of education, and there is no corresponding provision in the new municipal code. The section is not specifically repealed, and so far as we can observe, there is no objection to holding, and there is no reason why we should not hold, that that provision of Sec. 4105 Rev. Stat. is still in force, and that the levy that is attacked in this case was regularly made in pursuance of that statute, and the tax so levied is enforceable.

Our attention is called to the fact that by legislation of the legislature just adjourned this whole matter has been changed, and probably materially changed. We have not been furnished with a certified copy of the act [97 O. L. 544], or a printed copy, other than a copy of the bill which was introduced in the legislature, with certain printed and written memoranda upon it, and certain additions, and certain parts stricken out. We assume that this copy is correct; but it does not enlighten us as to the time when it passed or became a law, which is, perhaps, not very important. Our attention is called to the fact that by the new school code, schools of different kinds falling below the dignity of colleges and universities are defined, and so are colleges and universities. Under this new act universities are defined as follows, Sec. 4102 Rev. Stat.:

"A university supported in whole or in part by municipal taxation, is hereby defined as an assemblage of colleges united under one organization or management, affording instruction in the arts, sciences and the learned professions, and conferring degrees."

This seems to be according to the general definition laid down by lexicographers and scholars.

The act provides that the taxes to be levied after the adoption of this act, Sec. 4104 Rev. Stat., "shall only be levied and assessed when the chief work of such university, college or institution, is the maintenance of courses of instruction, in advance of and supplementary to the instruction authorized to be maintained in high schools by boards of education."

It contains an amendment of Sec. 4105 Rev. Stat.:

"The custody, management and administration of any and all estates or funds, given or transferred in trust to any municipality for

the promotion of education, and accepted by the council thereof, and any institution for the promotion of education heretofore or hereafter so founded other than a university as defined by this act, shall be comitted to, and exercised by, the board of education of the school district including such municipality.''

So that it is said that this whole subject is to be recommitted to the board of education. We are not prepared to dispute that. We do not, however, feel called upon to pass upon that question. In view of the present situation we think the court should decide this case upon the law as it stood at the time the action was instituted. It is shown by the testimony of the superintendent of schools that this so-called university and the high school are working together in conjunction and very harmoniously; and it appears that we are about at the close of the school year, that is to say, that the term of the schools will close during the month that we are about entering upon. The only effect that any order we could make now, in pursuance of this recent statute, could have, would be to transfer a part of this fund that is about to be collected to the hands of the board of education. It does not appear that this would operate in any way to the advantage of the plaintiff who is here complaining, or to the taxpayers of the city whom he represents. As I have indicated, the nature of the case has changed somewhat. It has developed now into an action of mandamus, practically. It is said what is desired is a mandatory injunction, which is, in its nature, a mandamus, when directed to particular officers and commanding performance of certain specific official acts or duties. The granting of the relief is largely within the discretion of the court. It is an extraordinary relief; it is a high prerogative writ. The courts are not always called upon to grant such relief, even though there may be a legal right to the thing sought. In the exercise of what we believe to be a sound discretion in this matter, we think that it would be wrong for us at this juncture to take the risk of demoralizing the schools of this city about the time they are to graduate their students who are to graduate this year, about the time they are to close the business of the school year, by decreeing that there shall be a change of management of the affairs of the so-called university; that these university directors shall step down and out, and charge shall be taken by the board of education, and all the funds and property shall be turned over by the former to the latter. Therefore we decline to do it. We leave the matter so that the parties may, if they choose, institute a new action under the new law. Our attention is called to the fact, which is now a matter of common information that we have a right to consider,

Waddick v. Merrell.

that there is a possibility, perhaps a probability, of some new features coming into this so-called university, whereby it may come within the purview of the new law, *i. e.*, the statutory definition of a university. For these reasons we think that we should not now undertake to mould the case and determine it under this recent legislation.

We therefore dismiss the petition at the costs of the plaintiff.

**Hull** and **Haynes, JJ.,** concur.

---

## COSTS AND FEES—OFFICE AND OFFICERS—STATUTES.